UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEBRA A. LEWIS,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>THE MARMON GROUP LLC,<br><br>　　　　　　Defendant. | No. 1:11-cv-01806<br><br>Judge William J. Hibbler<br>Magistrate Judge Martin C. Ashman |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
### RULE 12(B)(1) MOTION TO DISMISS

Defendant, The Marmon Group LLC ("Defendant" or "Marmon"), pursuant to Rule 12 of the Federal Rules of Civil Procedure, moves to dismiss Plaintiff Debra Lewis' ("Plaintiff" or "Lewis") Complaint of Employment Discrimination for lack of subject matter jurisdiction. Lewis was not an employee of Marmon, but rather was, at all relevant times, an independent contractor. The Seventh Circuit has held that "independent contractors are not protected by Title VII." *Knight v. United Farm Bureau Mutual Insurance Co.*, 950 F.2d 377, 380 (7th Cir. 1991). As a result, this Court should dismiss Title VII claim against Marmon for lack of jurisdiction.

### BACKGROUND

On April 23, 2008, Marmon and Lewis entered into a Consulting Services Agreement (the "Agreement"), a genuine copy of which is attached as Exhibit "A." Under the Agreement, Lewis retained discretion and control over the "methods and manners" by which she provided services, including the hours and days to be worked. Exhibit A, ¶ 2. The Agreement also provided that Lewis would invoice Marmon for her services and would be paid an hourly fee of $36.30. *Id.* at ¶ 3. Moreover, Lewis was "free to perform services for other companies during

the term of this Agreement." *Id.* at ¶ 8. Finally, Lewis expressly agreed and understood that she was "an independent contractor and that no employer-employee relationship [was] established as a result of this agreement or the services performed hereunder..." *Id.* at ¶ 9.

From April, 2008 until March, 2010, Lewis was engaged in designing and implementing an electronic billing system for Marmon Law Department. Attached hereto as Exhibit "B" is the Affidavit of Robert Webb; *see* ¶ 4. *See also* Lewis' December 29, 2009, email explaining her role as a consultant for Marmon, a copy of which is attached as Exhibit "C." When she was brought in as a consultant, none of her services were the type performed by Marmon employees, but rather required specialized skills in the automation of the accounts payable process. Webb Affidavit, Exhibit B, ¶ 6. Lewis was a computer engineer and no one on staff had such training. *Id.* Marmon did not provide Lewis with any training in order for her to be able to complete the task. Webb Affidavit, Exhibit B, ¶ 7.

During her time as an independent contractor for Marmon, Lewis was not required to work at Marmon's facilities, but rather worked from her home offices in Sardis, Mississippi, and in Lisle, Illinois. Webb Affidavit, Exhibit B, ¶ 8. Marmon provided her with a computer (which she returned upon the completion of the project) and a printer, but Lewis bore the cost of any other supplies she needed to perform her services. *Id.* Lewis only came into Marmon's Chicago office when she needed to exchange information with Marmon personnel. *Id.* At no time did Marmon pay or reimburse her travel costs. *Id.*

Lewis invoiced Marmon for her services and was compensated at an hourly rate of $36.30, per the Agreement. Webb Affidavit, Exhibit B, ¶ 9. Marmon made no deductions for taxes or other contributions from Lewis' compensation. Webb Affidavit, Exhibit B, ¶ 10. At no point did she receive benefits or vacation pay from Marmon. Webb Affidavit, Exhibit B, ¶ 11.

Nor did she fill out a job application or other employment-related forms required of all Marmon employees (e.g. I-9 form). Webb Affidavit, Exhibit B, ¶ 12. Finally, Lewis received a 1099 form from Marmon in 2008, 2009 and 2010. Webb Affidavit, Exhibit B, ¶ 13. Lewis directed Marmon to issue the 1099 form to both her and Payne and Associates, which, upon information and belief, is the name of Lewis' consulting company. *Id.*

Finally, Lewis referred to herself in written communications with Marmon as a consultant. Attached hereto as Exhibit "D" is a genuine copy of Lewis' October 12, 2009 email to Marmon, in which she refers to herself as a consultant.

Marmon terminated the Agreement in December, 2009, when Ms. Lewis completed the project on which she was consulting. Webb Affidavit, Exhibit B, ¶ 14. Lewis' separation from Marmon had nothing to do with her race, but rather was solely tied to the completion of her automation project, as provided for in the Agreement. *Id.*; *see also* Exhibit A, ¶ 5. In fact, her separation was so amicable that she requested and received a Letter of Recommendation from Marmon. *See* Exhibit C; *see also* Webb Affidavit, Exhibit B, ¶ 15.

## ARGUMENT

### I.  Standard of Review

Federal Rule of Civil Procedure 12(b)(1) requires a court to dismiss an action when it lacks subject matter jurisdiction. *United Phosphorus, Ltd. v. Angus Chemical Co.* 322 F.3d 942, 946 (7th Cir. 2003). When reviewing a motion to dismiss brought under Rule 12(b)(1), a court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Turner v. Mony Life Insurance Company*, No. 04 C 3065, 2004 U.S. Dist. LEXIS 21174, at *3-4 (N.D. Ill. Oct. 20, 2004), citing *United Transportation Union v. Gateway Western*

*Railway Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996) (stating that the court may consider evidence "at the dismissal stage when the question raised is one of subject matter jurisdiction."). The burden of proof in a Rule 12 (b)(1) motion lies with "the party asserting jurisdiction." *United, supra,* 322 F.3d at 946. Lewis cannot meet her burden.

## II. Title VII Is Inapplicable Because Lewis Was Not An Employee, But Rather An Independent Contractor

This Court lacks jurisdiction over this matter because Lewis – an independent contractor – was not covered by Title VII. The Seventh Circuit has held that "independent contractors are not protected by Title VII." *Knight v. United Farm Bureau Mutual Insurance Co.*, 950 F.2d 377, 380 (7th Cir. 1991). In order to determine whether a plaintiff was an employee or independent contractor of the defendant employer, the court must consider the following factors: "(1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations." *Turner, supra,* 2004 U.S. Dist. LEXIS 21174 at *7-8, citing *Worth v. Tyer, et al.*, 276 F.3d 249, 262-63 (7th Cir. 2001). The most important factor is the degree of control over the plaintiff's work. *Id.*

In this case, Lewis entered into an agreement with Marmon which specified that she was an independent contractor "and that no employer-employee relationship is established as a result of this agreement or the services performed hereunder…" The Agreement allowed Lewis to exercise complete control over the "methods and manner" of the provision of services and to decide the "hours and days to be worked." Thus, Lewis controlled her work load and work

hours. Similarly, in *Jones v. Seko Messenger*, 955 F. Supp. 931 (N.D. Ill. 1997), the plaintiff had an agreement which allowed him to set his own hours and workload and this Court found that, based on that language, the plaintiff's degree of control favored a finding that he was an independent contractor. *Id.* at 933.

Next, her services were not the type performed by Marmon employees, but rather required specialized skills in automation of the accounts payable process. Lewis was a computer engineer and on one on staff had such training. Marmon did not provide Lewis with any training in order for her to be able to complete the task. *See Hollingsworth-Hanlon v. Alliance Francaise,* No. 97 C 6841, 1998 U.S. Dist. LEXIS 9448, at *14 (N.D. Ill. June 22, 1998). Rather, Lewis brought the requisite skills to the relationship.

Further, while Marmon did provide her with a computer (which she returned upon the completion of the project) and a printer, Lewis bore the cost of any other supplies she needed to perform her services. She also maintained her own office in Sardis, Mississippi (roughly 600 miles from Marmon's Chicago office) and another one in Lisle, Illinois, and only came into Marmon's Chicago office when she needed to exchange information with Marmon personnel. At no time did Marmon pay or reimburse her travel costs. Accordingly, the location of Lewis' work and the source of the supplies needed to effectuate her work favors a finding that she was an independent contractor. *See Jones, supra,* 955 F. Supp. at 934 (court found that delivery person was an independent contractor in part because delivery person was required to provide own vehicle and was responsible for all maintenance on said vehicle).

Moreover, the way in which Lewis was paid and the fact that Marmon did not provide her with any benefits are akin to that of an independent contractor. *Id.* Indeed, Lewis acknowledged her independent contractor status and confirmed she was not entitled to any

employee benefits when she executed her Agreement. In fact, Lewis was paid for her services only after she invoiced Marmon for her work; she was then paid an hourly rate, per the Agreement. Marmon made no deductions for taxes or other contributions from Lewis' compensation. She received 1099 tax forms from Marmon, consistent with a non-employee relationship, and asked that her consulting company, Payne and Associates, be named on the tax form. At no point did Lewis receive any benefits (i.e. vacation pay, health insurance, etc.) from Marmon. These supporting documents, which were prepared well in advance of this litigation, conclusively establish Lewis' status as an independent contractor. Similarly, in *Jones,* the Court found that the method of payment was clear evidence of the plaintiff's independent contractor status, especially because he signed a written acknowledgment of independent contractor status, which confirmed that there was no entitlement to employee benefits, because he was compensated on a per piece basis, because he received a 1099 tax form, and because the defendant made no deductions for taxes and other contributions from the plaintiff's compensation. *Id.*

Finally, Lewis provided services for Marmon under the Agreement for less than two years. The Agreement specified that Marmon could "at any time direct [Lewis] to stop working immediately on any project," thereby negating any expectation by Lewis that she would maintain a long-term relationship with Marmon. Exhibit A, ¶ 5. In fact, Lewis' consulting relationship came to an end upon the completion of the billing automation project. Accordingly, the fifth factor supports a finding that Lewis was an independent contractor. *Hollingsworth-Hanlon, supra,* 1998 U.S. Dist. LEXIS 9448 at *17-18.

Based on the presence of these facts and their correlation to the five factors to establish employee status, Lewis' relationship with Marmon was that of an independent contractor and

consulting company, and *not* an employee-employer relationship. As such, Title VII does not apply and this Court lacks the subject matter jurisdiction to decide the case. *Currie v. Brown & Joseph, Ltd., et al.,* No. 02 C 6646, 2003 U.S. Dist. LEXIS 12566, at *4 (N.D. Ill. July 21, 2003); *see also Jones, supra,* 955 F. Supp. at 934 (Title VII claim dismissed with prejudice because plaintiff was an independent contractor).

## CONCLUSION

Because Lewis was an independent contractor and not an employee, Marmon is not an "employer" under Title VII. Accordingly, this Court should dismiss Plaintiff's claims for lack of jurisdiction.

Respectfully submitted,

THOMPSON COBURN LLP


By: ___/s/ *Susan Lorenc*___
       One of Its Attorneys

Erica Freeman, Esq.
Thompson Coburn LLP
One US Bank Plaza
St. Louis, Missouri 63101
Telephone: (314) 552-6000
Fax: (314) 552-7000

and

Susan Lorenc
Thompson Coburn LLP
55 E. Monroe, 37th Floor
Chicago, Illinois 60603
Telephone: (312) 346-7500
Fax: (312) 782-6894

Counsel for The Marmon Group LLC

# Unreported Cases



FOCUS - 7 of 28 DOCUMENTS

**WILLIAM TURNER, Plaintiff, v. MONY LIFE INSURANCE COMPANY, Defendant.**

**No. 04 C 3065**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

**2004 U.S. Dist. LEXIS 21174**

**October 20, 2004, Decided
October 21, 2004, Docketed**

**DISPOSITION:** Defendant's motion to dismiss denied.

**COUNSEL:** [*1] For WILLIAM TURNER, Plaintiff: William H. Hooks, Hooks Law Offices, P.C., Chicago, IL; Linda C. Chatman, Chatman Law Offices, LLC, Chicago, IL.

For MONY LIFE INSURANCE CO, Defendant: Steven Michael Hartmann, Richard Anthony Fiore, Freeborn & Peters, Chicago, IL.

**JUDGES:** SAMUEL DER-YEGHIAYAN, District Judge.

**OPINION BY:** Samuel Der-Yeghiayan

**OPINION**

**MEMORANDUM OPINION**

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Mony Life Insurance Company's ("Mony") motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below we deny Mony's motion to dismiss the Title VII claim (Count I) and we deny Mony's motion to dismiss the Section 1981 claim (Count II).

**BACKGROUND**

Plaintiff William Turner ("Turner") alleges that he was a Registered Sales Representative for Mony from August of 2000 through October of 2002. Turner claims that Mony employed him "on inferior and different terms than non-Black Registered Sales Agents, including but not limited to denying [Turner] the resources and information necessary to succeed at [Mony], denying [Turner] the opportunity to sell [Mony's] securities and [*2] systematically rejecting virtually every insurance application from [Turner's] Black clients." (Compl. Par. 7). Turner specifically contends that he was not able to perform his job properly because he was not provided with a properly functioning computer and he was denied consistent access to Mony computer network which is necessary for obtaining pertinent information. Turner alleges that he was excluded from Mony training programs. Turner alleges that the Mony securities department did not respond to his requests for information. Turner claims that he asked David Ruter, a manager for Mony, to assist him in obtaining a response from the securities department, but Turner received no call from the securities department. Turner claims that Mony routinely corresponded with Turner's "Black applicants, without notice to [Turner] but did not do so with White applicants of White sales employees." (Compl. Par. 31). Turner alleges that Mony terminated his employment on October 27, 2001, and that Mony indicated to him that the termination was due to "insufficient production" on his part. (Compl. par. 39). Turner filed a complaint in the instant action alleging discrimination in violation [*3] of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e *et seq.* (Count I), and civil rights violations in violation of 42 U.S.C. § 1981 ("Section 1981").

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) requires a court to dismiss an action when it lacks subject matter jurisdiction. *United Phosphorus, Ltd. v. Angus Chemical Co.* 322 F.3d 942, 946 (7th Cir. 2003). When reviewing a motion to dismiss brought under Rule 12(b)(1), this court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (citing *Rueth v. EPA*, 13 F.3d 227, 229 (7th Cir. 1993)); *United Transp. Union v. Gateway Western Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996)(stating that "in considering a motion to dismiss for lack of subject matter jurisdiction, the district court must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor."). This [*4] court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Ezekiel*, 66 F.3d at 897 (quoting *Capitol Leasing Co. v. Federal Deposit insurance Co.*, 999 F.2d 188, 191 (7th Cir. 1993); *Transp. Union*, 78 F.3d at 1210(stating that the court may consider evidence "at the dismissal stage when the question raised is one of subject matter jurisdiction."). The burden of proof in a Rule 12 (b)(1) motion lies with "the party asserting jurisdiction." *United*, 322 F.3d at 946.

In ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). The allegations of a [*5] complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High Sch.*, 144 F.3d 448, 454-55 (7th Cir. 1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). Under current notice pleading standard in federal courts a plaintiff "need to plead facts that, if true, establish each element of a "cause of action.'" *See Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that a "at this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "matching facts against legal elements comes later."). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. [*6] However, any conclusions pled must "provide the defendant with at least minimal notice of the claim," *Id.*, and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claim." *Perkins*, 939 F.2d at 466-67.

## DISCUSSION

Mony argues that Turner was merely an independent contractor for Mony and that since Turner was not an employee of Mony, the Title VII claim (Count I) should be dismissed for lack of subject matter jurisdiction. Mony also argues that the Section 1981 claim (Count II) should be dismissed for lack of subject matter jurisdiction to the extent that it contains allegations of employment-related discriminatory practice and that the Section 1981 claim should be dismissed for failure to state a claim.

I. Title VII Claim (Count I)

Mony argues that Turner cannot succeed on his Title VII claim because Turner was merely an independent contractor for Mony rather than an employee.

In support of Mony's contention that Turner was an independent contractor, Mony points out that Turner signed a Career Contract that included the following language: [*7]

> It is the intent of this contract, that you be an independent contractor. . . . Accordingly, nothing in this contract, or any rule or regulations established by the Company, shall create, or be interpreted to create, the relationship of employee and employer between you and the Company.

(Career Contract Par. 2(a)). Turner also signed a Registered Representative Contract which included the language: "nothing herein shall be construed to create the relationship of employer and employee between the Company and the Representative." (Registered Representative Contract Par. 2(a)). Title VII defines an "employee" as "an individual employed by an employer. . . ." 42 U.S.C. § 2000e(f). The Seventh Circuit has held that "independent contractors are not protected by Title VII." *Knight v. United Farm Bureau Mut. Ins. Co*, 950 F.2d 377, 380 (7th Cir. 1991). In order to determine whether the plaintiff was an employee or independent contractor of the defendant employer the court must consider the following factors: "(1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of [*8] work, (2) the

Case: 1:11-cv-01806 Document #: 14 Filed: 05/26/11 Page 11 of 20 PageID #:40

Page 3
2004 U.S. Dist. LEXIS 21174, *

kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations. " *Worth v. Tyer*, 276 F.3d 249, 262-63 (7th Cir. 2001). The most important factor is the degree of control over the plaintiff's work. *Id.* (stating that "if an employer has the right to control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved, an employer/employee relationship is likely to exist.")(quoting *Spirides v. Reinhardt*, 198 U.S. App. D.C. 93, 613 F.2d 826, 831-32 (D.C. Cir. 1979)).

Turner and Mony provide considerably different versions of the facts regarding Turner's work for Mony. For instance, Mony claims that it did not pay for any of Turner's business expenses such as postage and Turner claims that "Mony bore virtually all of [Turner's] expenses, excluding his auto expenses and long distance telephone calls." (P. Ans. [*9] Mem. 11). Turner claims that Mony provided him with an office, a computer, office supplies, phone for local calls, usage of a fax machine, and postage. Mony claims that it did not control or supervise Turner's work. Mony claims that it did not exercise any control over the customers and potential customers located and contacted by Turner, and did not control what Mony products Turner offered to customers, or the sales methods used by Turner. Mony also claims that Turner was not required to formally report to a supervisor at Mony on a daily basis. On the other hand Turner claims he was provided with an office and was required to spend "regular and significant time in that office" and that there was significant supervision of his work. (P. Ans. Mem. 9). Turner also claims that he was required to use a Mony employee as a secretary, that he was only allowed to sell exclusively for Mony within a territory designated by Mony, and that Turner was regularly required to access the Mony website for information. Turner also argues that he was required to meet minimum sales levels, attend quarterly status meetings at Mony to report on current and projected sales, and submit the paperwork for all [*10] sales to Mony. Finally, Turner contends that when Mony thought it warranted Mony would directly contact prospective customers located by Turner. These are only some of the clearly disputed facts involved in Turner's work for Mony.

Mony argues that we are bound to accept its version of the facts because it has put its facts in signed affidavits whereas Turner's allegations remain unsworn allegations. As indicated above, although for a motion to dismiss based on lack of subject matter jurisdiction we can consider evidence, nothing requires or permits us to rule based on the evidence submitted by Mony alone. It is at the summary judgment stage that the plaintiff may no longer rely on his pleadings, Fed. R. Civ. P. 56(e), not at the dismissal stage.

Mony claims that *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377 (7th Cir. 1991) is "extremely similar to the present" case and asks the court to follow the court's reasoning in *Knight*. (Mem. 6). The district court which was affirmed in *Knight* concluded that the plaintiff was an independent contractor, but the district court did not make such a ruling at the pleadings stage. In fact it was not until after [*11] a two day Bench trial that the district court made its findings. *Id.* at 377; *see also Taylor v. ADS, Inc.*, 327 F.3d 579, 581 (7th Cir. 2003)(affirming district court's grant of the defendant's motion for summary judgment because the plaintiff was an independent contractor); *Vakharia v. Swedish Covenant Hosp*, 190 F.3d 799, 802 (7th Cir. 1999)(affirming district court's grant of summary judgment based on independent contractor issue). We are cannot based upon the materials before us find that Turner was an independent contractor. We are not finding that Turner was an employee, but are only ruling that it is premature at this juncture to make a determination on this issue. Therefore, we deny Mony's motion to dismiss the Title VII claim.

II. Section 1981 Claim (Count II)

Mony argues that Turner has failed to state a Section 1981 claim because Turner bases his claim upon insurance contracts between Mony and insureds. Section 1981 states that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the [*12] full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a). Mony argues that since Turner was not a party to the contracts, Turner did not have his right to contract impacted by the contracts. Turners explains however, in his answer brief that his Section 1981 claim is based upon the contracts formed between Turner and Mony. Mony also argues that since Turner was not an employee of Mony Turner's Section 1981 claim cannot succeed. However, as indicated above such arguments are premature at this juncture. Therefore, we deny Mony's motion to dismiss the Section 1981 claim (Count II).

**CONCLUSION**

Based on the foregoing analysis, we deny Mony's motion to dismiss the Title VII claim (Count I) and we

deny Mony's motion to dismiss the Section 1981 claim (Count II).

Samuel Der-Yeghiayan

United States District Court Judge

Dated: October 20, 2004



8 of 20 DOCUMENTS

MARTHA HOLLINGSWORTH-HANLON, Plaintiff, v. ALLIANCE FRANCAISE OF CHICAGO, Defendant.

No. 97 C 6841

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

1998 U.S. Dist. LEXIS 9448

June 22, 1998, Decided
June 24, 1998, Docketed

**DISPOSITION:** [*1] AFC's motion to dismiss granted.

**COUNSEL:** For MARTHA HOLLINGSWORTH-HANLON, plaintiff: Howard P. Kamin, Randall B. Gold, Paul Michael Weltlich, Lawrence, Kamin, Saunders & Uhlenhop, Chicago, IL.

Martha Hollingsworth-Hanlon, plaintiff, Pro se, Glen Ellyn, IL.

For ALLIANCE FRANCAISE DE CHICAGO, defendant: Reuben L. Hedlund, Michael Rachlis, Margo Wolf O'Donnell, Stephen Y. Ma, Hedlund, Hanley & John, Chicago, IL.

**JUDGES:** GEORGE M. MAROVICH, UNITED STATES DISTRICT COURT.

**OPINION BY:** GEORGE M. MAROVICH

**OPINION**

*MEMORANDUM OPINION AND ORDER*

Plaintiff Martha Hollingsworth-Hanlon ("Hollingsworth-Hanlon") filed this action against Defendant Alliance Francaise of Chicago ("AFC") alleging that she was discriminated against and terminated in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, including its anti-retaliation provision, § 12203(a)-(c). AFC has filed a motion seeking to dismiss Hollingsworth-Hanlon's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). [1] For the reasons set forth below, the AFC's motion is granted.

1 The Court need not address AFC's 12(b)(6) motion because of its conclusion that it lacks jurisdiction over this matter.

[*2] *BACKGROUND*

AFC is a not-for-profit organization in Chicago created for the purpose of promoting French culture and language. It has a membership of approximately 1,350 persons. As part of its promotion of French culture, AFC offers French language and literature classes on a quarterly basis for both members and non-members.

Hollingsworth-Hanlon was employed by AFC as a part-time French language teacher over a period of ten years between 1987 and 1997. [2] Hollingsworth-Hanlon, and other teachers at AFC, enter into agreements with AFC to teach specific classes on a quarter-by-quarter basis. Each quarter, teachers inform AFC of their availability -- days and times -- and their interest in teaching a particular course(s). After receiving notice of a teacher's availability, AFC sends each teacher a letter-agreement listing the classes that the teacher is scheduled to teach for the quarter and the amount it is willing to pay for each class taught. Teachers are then asked to sign at the bottom of the letter-agreement if the schedule and the fees are acceptable to them. This process is repeated for every quarter that a teacher indicates that he or she is willing to teach. Teachers are [*3] not given offices at AFC and are permitted to teach at other institutions or hold full-time jobs with other companies.

2    AFC emphasizes that Hollingsworth-Hanlon was a part-time teacher who taught classes "over various periods" during a ten-year time span. Specifically, Hollingsworth-Hanlon first taught beginning in the summer quarter of 1987 until 1989. She then resumed teaching for another year in October 1994 and again in 1996 until she was hospitalized.

In addition to providing quarterly teaching opportunities, AFC encourages its teachers -- including Hollingsworth-Hanlon -- to give private tutoring lessons at AFC. AFC provides each teacher with a copy of its policy regarding private lessons. The policy provides that private lessons can take place at AFC during regular business hours as long as AFC is informed of the time and date of the lessons to avoid scheduling conflicts. The policy also states that any student referred to the teacher by AFC will remain a client of AFC for private lessons and that communication [*4] with AFC students should be carried out through AFC's office.

Hollingsworth-Hanlon allegedly suffers from severe depression, anxiety and hypertension, and has been under the regular care of a psychiatrist and various therapists. Hollingsworth-Hanlon contends that AFC and its administrators were aware of her alleged disability and had made various comments about her "unstable" condition.

On or about November 24, 1996, Hollingsworth-Hanlon apparently suffered a serious reaction from various anti-depressant and anti-hypertensive medications. Her reaction necessitated that she be hospitalized and treated in the intensive care unit for approximately two weeks. During her hospitalization, Hollingsworth-Hanlon alleges that she informed AFC that she had been hospitalized for psychiatric reasons, but had been able to secure a substitute teacher to teach her classes at AFC.

Hollingsworth-Hanlon was released from the hospital in early December, 1996. Hollingsworth-Hanlon alleges that after her release from the hospital, she was informed by one of AFC's students that AFC's Director, Sonia Aladjem ("Aladjem"), had stated that Hollingsworth-Hanlon was emotionally or mentally "unstable." Hollingsworth-Hanlon [*5] was also informed by a co-worker that it was common knowledge at AFC that she had been hospitalized for psychiatric reasons.

In early January, 1997, Aladjem allegedly informed Hollingsworth-Hanlon that all but one of her scheduled classes for the winter semester had been canceled. Hollingsworth-Hanlon contends that she was also prohibited from conducting private language lessons with several students and that AFC stopped referring additional private students to her for lessons. Furthermore, Hollingsworth-Hanlon alleges that she was consistently ignored and avoided when she attempted to discuss the situation with Aladjem.

On March 14, 1997, Hollingsworth-Hanlon filed a Charge of Disability Discrimination with the EEOC in Chicago. On about April 16, 1997, shortly after the AFC was notified of the EEOC Complaint, Hollingsworth-Hanlon was allegedly terminated from her employment. Hollingsworth-Hanlon contends that Aladjem informed her that she was no longer permitted on AFC's premises and that she was a "back stabber" for complaining to the EEOC. Hollingsworth-Hanlon further alleges that Julius Lewis, Director of AFC's Executive Committee, told her that she had been terminated because [*6] she filed an EEOC Charge that created "unfriendly" circumstances. 3

3    AFC denies these allegations and claims that it asked Hollingsworth-Hanlon to continue teaching a class which she had taught in the prior quarter, but she declined. As a result, AFC decided not to offer a contract to Hollingsworth-Hanlon.

Hollingsworth-Hanlon received her Right-to-Sue letters from the EEOC on June 30, 1997 and July 24, 1997. On September 30, 1997, Hollingsworth-Hanlon filed her Complaint alleging violations of the ADA with this Court.

*DISCUSSION*

I. *Standards For a Motion to Dismiss*

AFC seeks to dismiss Hollingsworth-Hanlon's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) allows the court to dismiss an action for lack of subject matter jurisdiction. Pursuant to Rule 12(b)(1), "the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (citing *Rueth v. United [*7] States Envtl. Protection Agency*, 13 F.3d 227, 229 (7th Cir. 1993)). In order to determine if subject matter jurisdiction exists, "the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue. . .." *Id.* If the factual basis for subject matter jurisdiction is contested, the plaintiff has the burden of bringing forward "competent proof" that subject matter jurisdiction exists. *Johnson v. Equitable Life Assurance Society of the United States*, 1997 U.S. Dist. LEXIS 10801, 1997 WL 417409, *2 (N.D. Ill. July 22, 1997). In other words, a plaintiff must prove to the court by "a preponderance of the evidence or 'proof to a reasonable probability that jurisdiction exists.'" *Villasenor v. Industrial Wire & Ca-*

*ble, Inc.*, 929 F. Supp. 310, 312-13 (N.D. Ill. 1996) (citations omitted).

II. *Hollingsworth-Hanlon's Employment Status Under the ADA*

AFC maintains that this Court lacks subject matter jurisdiction over Hollingsworth-Hanlon's ADA Complaint because: (1) Hollingsworth-Hanlon is not an "employee" as defined under the ADA; and (2) AFC is not an "employer" as defined by the ADA. Hollingsworth-Hanlon insists that [*8] she, and all of the other part-time teachers employed by AFC, should be considered "employees" as defined by the ADA and that AFC is therefore an "employer" under the ADA. [4]

> 4   Under the ADA, an "employer" is "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year." 42 U.S.C. § 12111(5)(A). AFC contends that it had no more than five "employees" during the relevant time frame. If, however, AFC's part-time teachers are determined to be "employees," AFC would then have sufficient "employees" to be characterized as an "employer" under the ADA. Thus, the "employee" status of Hollingsworth-Hanlon and other AFC part-time teachers is ultimately determinative of both issues.

The ADA defines an employee as "an individual employed by an employer." 42 U.S.C. § 12111(4). Based on this circular definition, Hollingsworth-Hanlon contends she is an employee and AFC insists that Hollingsworth-Hanlon is an "independent [*9] contractor," and therefore is not protected by the ADA. Both parties agree that the terms of the ADA apply only to "employees," not independent contractors. *See, e.g., Birchem v. Knights of Columbus*, 116 F.3d 310 (8th Cir. 1997).

To determine whether an individual is an employee or an independent contractor, the Seventh Circuit has adopted the "economic realities" test which focuses on the following five factors:

> (1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work;
>
> (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace;
>
> (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations;
>
> (4) method and form of payment and benefits; and,
>
> (5) length of job commitment and/or expectations.

*See Ost v. West Suburban Travelers Limousine, Inc.*, 88 F.3d 435, 438 (7th Cir. 1996) (citing *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 378-79 (7th Cir. 1991)). While acknowledging the importance of each factor, the court has recognized that [*10] "the employer's right to control is the most important factor in determining whether an individual is an employee or an independent contractor." *Id.*

A. *Control and Supervision*

The first factor examines the amount of control and supervision AFC had over Hollingsworth-Hanlon. "If an employer has the right to control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved, an employer/employee relationship is likely to exist." *Ost*, 88 F.3d at 439 (quoting *Spirides v. Reinhardt*, 198 U.S. App. D.C. 93, 613 F.2d 826, 831-32 (D.C. Cir. 1979)). In other words, having a significant amount of control over an individual, indicates that the individual is an employee as opposed to an independent contractor.

Here, the "right to control" factor weighs heavily in favor of a finding that Hollingsworth-Hanlon is an independent contractor. To begin with, Hollingsworth-Hanlon has control over whether she will teach in any given quarter, when she will teach in any given quarter, and what classes, if any, she will chose to teach. AFC does not have any minimum hour requirements for its teachers and its [*11] teachers are permitted to work elsewhere while under contract with AFC. Hollingsworth-Hanlon also has control over the manner in which she chooses to teach her classes and the materials she wants to use. [5] In the same vein, Hollingsworth-Hanlon appears to have been given significant control in deciding how to conduct her private lessons. Ultimately, it does not appear that Hollingsworth-Hanlon was strictly supervised by AFC inside or outside the classroom setting.

> 5   AFC does require that students reach a certain "basic level of proficiency" at the end of each quarter so that they may continue in more advanced classes.

Hollingsworth-Hanlon concedes that she had a certain amount of flexibility in her schedule, but argues that because she was required to abide by AFC's private lessons policy and was not free to delegate all or any part of her work at AFC without obtaining prior approval, AFC "clearly" exercised control over her. (Pl.'s Mem. at 5-6.) This Court does not agree. AFC's private lessons policy simply [*12] outlines certain ground rules for accepting referrals. The policy does not direct Hollingsworth-Hanlon how to conduct her private lessons, what subjects to cover in those lessons or any of the other details germane to the actual *teaching* of the students. The manner in which Hollingsworth-Hanlon chose to teach her students -- in class and in private lessons -- remained exclusively within her control.

Both parties have directed the Court to *Jones v. Seko Messenger, Inc.*, 955 F. Supp. 931 (N.D. Ill. 1997). In *Jones*, the district court considered whether a messenger service driver ("Jones") was an employee or an independent contractor for purposes of Title VII, 42 U.S.C. § 2000e *et seq.* [6] Relying in part on the "critical control factor," the court concluded that Jones was an independent contractor. *Id.* at 934. The court noted that the employment agreement between Jones and the delivery company: (1) allowed Jones to set his own hours and days as to when he was available for assignments; (2) set no minimum number of days or hours that Jones was required to work; (3) allowed Jones to take on or reject any potential delivery assignments. *Id.* at 933. Thus, Jones controlled [*13] his work hours and work load in much the same way as Hollingsworth-Hanlon.

>  6   The parties agree that the analysis of this question under Title VII is the same as under the ADA.

Similarly, in *Ost v. West Suburban Travelers Limousine, Inc.*, 88 F.3d at 435, the Seventh Circuit considered whether an airport limousine driver was properly found to be an independent contractor by the district court. After observing that the limousine driver could chose what days to work, could refuse assignments, could chose his own route and could work for other limousine dispatching services, the court found that "the manner in which the drivers performed their services for [the Defendant] was primarily within their own control." *Id.* at 438. The court went on to conclude that the limousine driver was an independent contractor "because the details concerning performance of the work remained essentially within the control of the driver." *Id.*

Accordingly, this Court finds that the "right to control" factor weighs heavily [*14] in favor of Hollingsworth-Hanlon's status as an independent contractor. Although Hollingsworth-Hanlon did have certain restrictions placed upon her by AFC, most involved ordinary administrative procedures that had little effect on her ultimate control over her work. *See Alexander v. Rush North Shore Med. Ctr.*, 101 F.3d 487, 493 (7th Cir. 1996) (although anesthesiologist was required to spend specified amount of time per week "on call" and was assigned patients on a daily basis, details of his work remained within his control), *cert. denied*, 139 L. Ed. 2d 19, 118 S. Ct. 54 (1997).

B. *The Nature of Occupation and Skills Required*

In evaluating the second factor, courts look to see whether a position requires special skills. *Jones*, 955 F. Supp. at 933. A determination that a position does not require special skills weighs in favor of finding an employee/employer relationship. *Id.* In addition, an employee/employer relationship is presumed where an employer provides training for its employees in order for them to obtain the special skills required by the position. *Johnson*, 1997 WL 417409, at *3.

Again, the facts of this case heavily favor Hollingsworth-Hanlon's [*15] status as an independent contractor under the "skill" factor. AFC requires its teachers to have certain skills, including the equivalent of a French degree and/or teaching experience. Hollingsworth-Hanlon admittedly obtained her knowledge of French through her studies and while living abroad, not from AFC. Moreover, AFC contends that it does not provide formal training for any of its faculty members.

C. *Location and Costs of Operation and Maintenance*

The third factor examines the location and maintenance of the workplace and who assumes the operation costs. Here, although Hollingsworth-Hanlon did not have an office, AFC provided and maintained a workplace for her to conduct her teaching. Moreover, Hollingsworth-Hanlon was not responsible for providing any supplies. [7] Instead, the majority of supplies required for Hollingsworth-Hanlon's courses were paid for by AFC and any additional materials the students had the option of copying themselves. Thus, the third factor favors a finding that Hollingsworth-Hanlon was an employee.

>  7   In some instances where supplies were not provided, AFC reimbursed Hollingsworth-Hanlon for expenses related to her teaching position such as paint, chalk, markers, glue and felt.

[*16] D. *Method in the Form of Payment and Benefits*

The fourth factor examines the form of payment and benefits to determine whether the individual was an employee or independent contractor. With one exception, AFC's treatment of Hollingsworth-Hanlon indicates that

it considered her to be an independent contractor, not an employee.

For example, Hollingsworth-Hanlon did not receive life insurance, health benefits, unemployment benefits, vacation benefits, sick time or medical leave from AFC. Additionally, Hollingsworth-Hanlon was not paid a salary -- hourly or otherwise -- but was paid only for the classes she actually taught. *See Jones*, 955 F. Supp. at 934 (messenger driver paid on a "per piece delivery basis" was an independent contractor). Thus, AFC's method of payment and the lack of benefits provided to Hollingsworth-Hanlon indicates that it viewed her as an independent contractor.

Hollingsworth-Hanlon, however, rightly points out that AFC withheld federal and state income taxes, social security and medicare taxes from her pay. As a result, she received a W-2 tax form for each year of her employment rather than the 1099 Miscellaneous Income form ordinarily issued to independent [*17] contractors. [8] While these facts support her position, the Court is not convinced that AFC's accounting practices outweigh its decisions not to pay its teachers a set salary or to provide them with any benefits.

> 8   AFC also provided workers' compensation insurance coverage for its faculty members

E. *Length of Job Commitment and/or Expectations*

The final factor concerns the duration of Hollingsworth-Hanlon's job commitment and/or expectations. In *Jones*, the court held the length of an individual's employment and his/her job commitment was a factor weighing in favor of employee status. 955 F. Supp. at 934. Here, although Hollingsworth-Hanlon asserts that she worked at AFC for approximately ten years, her employment was not continuous [9] and there is no indication that either party expected to maintain a continuous, long-term employment relationship. Hollingsworth-Hanlon's agreements with AFC were always entered into on a quarter-to-quarter basis, and AFC consistently stated that it did not guarantee future [*18] teaching jobs. Thus, while Hollingsworth-Hanlon refers the Court to a recommendation letter in which Aladjem refers to AFC's intent to "keep her for years to come," this representation is not borne out by the actions of either party and must properly be considered in context -- i.e., it is contained in a letter of recommendation designed to help Hollingsworth-Hanlon receive a scholarship to study in France. A careful assessment of all the evidence reveals that Hollingsworth-Hanlon's length of job commitment and expectations are not as strong as she asserts. Thus, the fifth factor does not support Hollingsworth-Hanlon's status as an employee.

> 9   Hollingsworth-Hanlon taught for two quarters in 1988 and then took a six year hiatus until the fall of 1994 when she taught for another three quarters until the fall of 1995. She resumed teaching again in 1996 until she was hospitalized.

After weighing all five factors, the Court finds that AFC did not control Hollingsworth-Hanlon and, with limited exceptions, treated [*19] her as an independent contractor. Accordingly, the Court concludes that Hollingsworth-Hanlon has failed to satisfy her burden of establishing her status as an "employee" and therefore may not obtain recovery under the ADA.

CONCLUSION

For the foregoing reasons, this Court grants AFC's motion to dismiss.

ENTER:

GEORGE M. MAROVICH

UNITED STATES DISTRICT COURT

DATE: June 22, 1998

**JUDGMENT IN A CIVIL CASE** - Date: 6/23/1998

Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that this action is hereby dismissed in its entirety.

Date: 6/23/1998



FOCUS - 9 of 28 DOCUMENTS

CAROL CURRIE, Plaintiff, v. BROWN & JOSEPH, LTD., CHRIS CAPPUCCILLI, THOMAS MCGRATH, DAVID ARTRIP AND SUSAN CAPPUCCILLI, Defendants.

Case No. 02 C 6646

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

2003 U.S. Dist. LEXIS 12566

July 21, 2003, Decided
July 22, 2003, Docketed

**DISPOSITION:** [*1] Defendants' motion to dismiss Counts I through V for lack of subject matter jurisdiction and Counts VI through XXI for lack of supplemental jurisdiction granted.

**COUNSEL:** For CAROL CURRIE, plaintiff: Elliott David Hartstein, Robert Stuart Pinzur, Laura E. Cohen, Barbara Block Bryan, Megan Laura Kerr, Brian Scott Brewer, Michael Sigal, Pinzur & Hartstein, Ltd., Long Grove, IL.

For BROWN & JOSEPH, LTD., CHRIS CAPPUCCILLI, THOMAS MCGRATH, DAVID ARTRIP, SUSAN CAPPUCCILLI, defendants: James Stuart Harkness, Mark J McAndrew, George Michael Bebble, Momkus McCluskey McAndrew & Monroe, LLC, Downers Grove, IL.

**JUDGES:** MARVIN E. ASPEN, United States District Judge.

**OPINION BY:** MARVIN E. ASPEN

**OPINION**

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Plaintiff, Carol Currie, filed a twenty-one count Amended Complaint against Defendants Brown & Joseph, Ltd. ("Brown & Joseph"), Chris Cappuccilli, Thomas McGrath, David Atrip, and Susan Cappuccilli (the "Individual Defendants"). The first five counts of Currie's Amended Complaint allege violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and Section 1981 of the [*2] Civil Rights Act of 1981 ("Section 1981"), 42 U.S.C. § 1981, for discrimination based on sex (Count I), discrimination based on sexual harassment (Count II), religious discrimination (Count III), hostile work environment (Count IV), and retaliation (Count V). Counts VI through XXI allege state law claims against Brown & Joseph as well as the Individual Defendants.[1] Presently before us is Defendants' motion to dismiss Counts I through V for lack of subject matter jurisdiction and Counts VI through XXI for lack of supplemental jurisdiction. For the reasons set forth below, we grant Defendants' motions.

    1 Currie's sixteen state law claims include: assault (Counts VI and VII); breach of contract (Count VIII); breach of the Illinois Sales Representative Act, 820 ILCS § 120/2 (Count IX); accounting (Count X); conspiracy (Count XI); defamation (Counts XII and XIII); invasion of privacy (Counts XIV, XV, XVI, and XVII); intentional infliction of emotional distress (Counts XVIII and XIX); tort of outrage (Counts XX and XXI).

[*3] **I. BACKGROUND**

The following facts are taken from Plaintiff's complaint and are deemed true for the purposes of this motion. *See MCM Partners, Inc. v. Andrews-Bartlett & Assoc., Inc.*, 62 F.3d 967, 972 (7th Cir. 1995). On May 24,

1999, Currie entered into an agreement with Brown & Joseph, a commercial collection agency and receivable outsource company, to provide services to the company as an independent contractor. Brown & Joseph employed Currie in that capacity from May 24, until it discharged her on December 10, 2001. During the course of her employment, Chris Cappuccilli, an agent of Brown & Joseph and Currie's manager, made comments to co-workers and clients about the size of Currie's breasts. He also called Currie a "greedy Jew bitch," a "greedy Jew whore," and a "Democrat looking for entitlements." On one occasion, he told Currie that women in her line of work "do not make the kind of money" she was earning at the time.

Although Currie told Chris Cappuccilli that she objected to his behavior, he continued to make comments about her. After Currie had spoken to Cappuccilli regarding his statements, he attempted to force her into becoming a Brown & Joseph [*4] employee, rather than an independent contractor, without the benefit of a written contract or other defined terms. When Currie refused employment, Chris Cappuccilli told her to "pack her shit and go," thereby terminating Currie's employment as an independent contractor. Currie filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued Currie a Right to Sue Letter on June 24, 2002. Currie filed a complaint on September 18, 2002, which she amended on November 20, 2002. Defendants filed their motion to dismiss on April 3, 2003.

## II. ANALYSIS

### A. Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(1) is to decide the adequacy of the complaint, not the merits of the case. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Federal Rule of Civil Procedure 12(b)(1) requires dismissal of claims over which the federal court lacks subject matter jurisdiction. Jurisdiction is the "power to decide" and must be conferred upon the federal court. *In re Chicago, Rock Island & Pacific R..R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986). In reviewing a motion to dismiss [*5] for lack of subject matter jurisdiction, the Court may look beyond the complaint to other evidence submitted by the parties to determine whether subject matter jurisdiction exists. *See United Transp. Union v. Gateway Western Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996). The plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirement have been met. *See Kontos v. United States Dep't. of Labor*, 826 F.2d 573, 576 (7th Cir. 1987).

### B. Discussion

#### 1. *Counts I - V*

Currie's Amended Complaint asserts that we have jurisdiction over Counts I through V pursuant to Title VII and Section 1981. We disagree. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Title VII's protections do not extend to independent contractors. *See Worth v. Tyer*, 276 F.3d 249, 262 (7th Cir. 2001); [*6] *see also Ost v. West Suburban Travelers Limousine, Inc.*, 88 F.3d 435, 440 (7th Cir. 1996); *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 380 (7th Cir. 1991). Currie's Amended Complaint clearly states that Brown & Joseph employed her as an "independent contractor." Currie further states "there is no doubt Plaintiff, Carol Currie, was an independent contractor in her relationship with Defendant, Brown & Joseph, Ltd." Resp. at 6. Accordingly, we find that Currie has failed to meet her burden of proof that we have jurisdiction over Counts I through V of her complaint under Title VII.

Currie has similarly failed to meet her burden of proof that we have jurisdiction over Counts I through V of her complaint under Section 1981. Section 1981 protects specific rights, including those rights relating to contract formation and enforcement, against racial discrimination only. *See Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 177 (7th Cir. 1996); *see also Anooya v. Hilton Hotels Corp.*, 733 F.2d 48, 50 (7th Cir. 1984). Currie's Amended Complaint does not allege that Defendants' discriminated against her on account [*7] of her race. As Currie concedes, "obviously, Plaintiff cannot recover under § 1981, as no racial discrimination has been alleged or plead in the First Amended Verified Complaint." Resp. at 6.

Currie nonetheless argues that she can recover under 42 U.S.C. § 1981a ("Section 1981a"). We disagree. Section 1981a provides in part:

> In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-5, 2000e-16) against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704 or 717 of the Act (42 U.S.C. 2000c-2, 2000e-3, 2000e-16), and provided that the complaining party cannot recover under sec-

tion 1981 of this title, the complaining party may recover compensatory and punitive damages . . . from the respondent.

Currie asserts that Congress' "adoption of 42 U.S.C. § 1981a has broadened the scope of § 1981 to include actions of discrimination by employers of independent contractors based upon race, sex, sexual [*8] harassment, religion and creating a hostile work environment as a result of such discrimination, among other factors." Resp. at 6. In support of her assertion, Currie cites only to the First Circuit's ruling in *Danco v. Wal-Mart*, 178 F.3d 8 (1st Cir. 1999). However, the *Danco* court merely held that independent contractors could bring hostile work environment claims based on racial discrimination under Section 1981. *See id.* at 178 F.3d at 13-14. *Danco* did not alter the long-standing interpretation that Section 1981 applies to racial discrimination only. To the contrary, the First Circuit explained that Section 1981 "protects only certain specified rights, including the right to make and enforce contracts, and it protects them only against racial discrimination." *Id.* at 13. Courts in this jurisdiction have continued to similarly interpret Section 1981 since the *Danco* decision. *See Riley v. UOP LLC*, 244 F. Supp.2d 928, 936 (N.D. Ill. 2003); *see also Johnson v. Fed. Express Corp.*, 2001 U.S. Dist. LEXIS 8685, 2001 WL 725400, *6 (N.D. Ill. 2001); *Robinson v. Sabis Education Systems, Inc.*, 1999 WL 414262, [*9] *11 (N.D. Ill. 1999).

Section 1981a does not provide an independent ground for relief on which Currie may rely. *See Wojciechowski v. Emergency Technical Serv. Corp.*, 1995 U.S. Dist. LEXIS 14741, 1995 WL 603186, *2 (N.D. Ill. 1995). Rather, it is a damages provision that permits the recovery of compensatory and punitive damages for intentional violations of Title VII. *See* § 1981a; *see also E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 287, 122 S. Ct. 754, 760, 151 L. Ed. 2d 755 (2002). The adoption of Section 1981a was limited to the expansion of compensatory remedies available under Title VII. *See Pollard v. E.I. DuPont de Nemours & Co.*, 532 U.S. 843, 852, 121 S. Ct. 1946, 1951, 150 L. Ed. 2d 62 (2001). In order to recover under Section 1981a, Currie must have a valid claim under Title VII. However, as Currie herself admits, she does not have a claim under Title VII because of her status as an independent contractor. In light of Currie's failure to establish that we have subject matter jurisdiction over her federal law claims, we dismiss Counts I through V of her Amended Complaint.

2. *Counts VI - XXI*

Currie's Amended Complaint contends that we have [*10] supplemental jurisdiction over Counts VI through XXI pursuant to 28 U.S.C. § 1367(a). 28 U.S.C. § 1367 states, in relevant part: (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if: (3) the district court has dismissed all claims over which it has original jurisdiction. We exercise our discretion under 28 U.S.C. 1367(c), and dismiss without prejudice Counts VI through XXI of Currie's Amended Complaint.

### III. CONCLUSION

For the foregoing reasons, we grant Defendants' motion to dismiss Counts I through V for lack of subject matter jurisdiction and Counts VI through XXI for lack of supplemental jurisdiction. [2] [*11]   It is so ordered.

> 2   In light of our ruling regarding Defendants' motion to dismiss Counts I through V for lack of subject matter jurisdiction, we deny as moot Defendants' motion to dismiss Counts I and III for failure to state a claim upon which relief may be granted.

MARVIN E. ASPEN

United States District Judge

Dated 7/21/03

### JUDGMENT IN A CIVIL CASE

IT IS HEREBY ORDERED AND ADJUDGED that We grant defendants' motion to dismiss (12-1) Counts I through V for lack of subject matter jurisdiction and Counts VI through XXI for lack of supplemental jurisdiction.

Date: 7/21/2003